AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 13-8291-JMH |
| Elvis Cooper, Carolina Goncalves Massote, and Wellida Bento Tomaz | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

FILED by _____ D.C.

JUN 07 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of ____June 5, 2013____ in the county of ____Palm Beach____ in the
____Southern____ District of ____Florida____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(2)(B)(ii) | Alien Smuggling for the purpose of Private Financial Gain (Elvis Cooper) |
| 18 U.S.C. § 3144 | Material Witnesses (Carolina Goncalves Massote, and Wellida Bento Tomaz) |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

*I find probable cause. JMH*

_____
*Complainant's signature*

ICE S/A Cynthia Samples
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   06/07/2013

_____
*Judge's signature*

City and state:   West Palm Beach, FL        Hon. James M. Hopkins, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Cynthia Samples, a Special Agent for the United States Department of Homeland Security, U.S. Immigration and Customs Enforcement, having being duly sworn, do hereby depose and state as follows:

1. Your affiant has been employed as a Special Agent for the United States Department of Homeland Security, United States Immigration and Customs Enforcement ("ICE") for approximately 4 years. Your affiant is currently assigned to the ICE Office located in West Palm Beach, Florida.

2. As a Special Agent with ICE, your affiant is responsible for enforcing customs and immigration laws of the United States. Your affiant has also participated in investigations of this nature.

3. The information contained in this affidavit is based on my personal knowledge; information received from other law enforcement officers; as well as information received from the United States Coast Guard. This affidavit does not set forth every fact known to me regarding this investigation but only those facts necessary to establish probable cause to charge Elvis Cooper with Alien Smuggling for the purpose of Financial Gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and to charge Carolina Goncalves Massote and Wellida Bento Tomaz, illegal aliens from Brazil, as material witnesses to Elvis Cooper's commission of the offense of Alien Smuggling for the purpose of Financial Gain in violation of 18 U.S.C. § 3144.

4. On June 5, 2013, at approximately 12:10 am, a crew member onboard a United States Coast Guard ("USCG") aircraft sighted a vessel running without navigation lights in international waters approximately forty three (43) nautical miles east of the Lake Worth Inlet in Palm Beach County, Florida. The vessel with one outboard engine was traveling in a westerly

direction on a course of 269 degrees. At approximately 1:21 am, the vessel stopped approximately twenty (20) nautical miles east of the Lake Worth Inlet. The USCG aircraft subsequently lost sight of the suspect vessel; however, USCG Station Lake Worth Inlet had previously deployed vessels to patrol at twelve (12) nautical miles.

5. U.S. Customs and Border Protection ("CBP") had deployed two patrol vessels to intercept the suspect vessel. A crew member onboard one of CBP's vessels utilizing the vessel's radar identified the suspect vessel stopped in the water approximately thirteen (13) nautical miles east of the Lake Worth Inlet. Then, utilizing the vessel's Forward Looking Infrared Radar ("FLIR"), a crew member onboard the same CBP patrol vessel noticed that the suspect vessel was then underway heading westbound towards their location. The CBP and USCG vessels were in the area.

6. The two CBP patrol vessels followed the suspect vessel until it was within 12 nautical miles of the Palm Beach County shoreline at which time each of the CBP vessels activated their blue lights, sirens, spotlight and ordered the suspect vessel to stop. The operator of the suspect vessel, who was later identified as Elvis Cooper, did not comply with commands to stop and attempted to flee from the CBP patrol vessels. The CBP patrol vessels pursued the suspect vessel, which was last registered in Florida on March 15, 2006. This pursuit came to a conclusion after one of the CBP vessels fired two warning shots and one disabling round at the suspect vessel's engine, and the other CBP vessel fired two disabling rounds at the suspect vessel's engine, which successfully disabled the suspect vessel approximately nine (9) nautical miles east of the Lake Worth Inlet. During their pursuit of the suspect vessel, CBP Marine Interdiction Agents only saw one person operating the suspect vessel, which was the same

person operating the suspect vessel at the time it became disabled, that is, the individual later identified as Elvis Cooper.

7. A Marine Interdiction Agent boarded the suspect vessel and handcuffed Elvis Cooper for officer safety. Approximately fifteen (15) seconds later, the suspect vessel capsized, sending all fourteen (14) of the boat's occupants with no life jackets and CBP Marine Agents into the water. All of the boat's occupants were rescued and placed on either a CBP or USCG vessel. All fourteen (14) occupants, which included Carolina Massote and Wellida Bento-Tomaz, were determined to be citizens and nationals of foreign countries without documentation permitting them to lawfully enter the United States. Four (4) of the boat's occupants required medical treatment and were transported to St. Mary's Hospital in West Palm Beach, Palm Beach County, Florida. The remaining ten (10) occupants, which included Carolina Massote and Wellida Bento-Tomaz, were eventually brought to the USCG Station Lake Worth located in Palm Beach County, Florida. All ten (10) occupants were then taken to the U.S. Border Patrol Station for processing and interviews.

8. At the Border Patrol Station, your affiant questioned Elvis Cooper about the events leading up to his encounter on the suspect vessel. Prior to questioning, Elvis Cooper was advised of his rights under *Miranda*, which he waived. During his post-*Miranda* interview, Elvis Cooper made the following statements:

    a. On or about June 4, 2013, Elvis Cooper's brother, Greg Donald Pinder, arrived at his home and informed him that some people needed help getting across the water. That evening, Elvis Cooper was driven to a house to meet the organizer of the smuggling venture, known to him as "Shaba." Shaba offered to pay Elvis Cooper $2,000 up front and $1,000 "per head" for each alien successfully

3

       smuggled into the United States. Shaba instructed Elvis Cooper not to turn back the vessel with the people unless it was necessary.

    b. Shaba instructed Elvis Cooper to depart from the "West End" of the Bahamas and to follow a course of "280." Shaba told Elvis Cooper that this course would get him to the United States. Shaba also provided Elvis Cooper with a course of "110" for his return trip to the Bahamas.

9.   At the Border Patrol Station, Agents individually questioned Carolina Massote and Wellida Bento-Tomaz. Carolina Massote and Wellida Bento-Tomaz identified the known photograph of Elvis Cooper as the driver of the boat. They each provided specific details about the smuggling venture and organization. Carolina Massote and Wellida Bento-Tomaz are citizens and nationals of Brazil subject to removal from the United States. If removed to Brazil, it will be impracticable to secure their presence at future court proceedings in the Elvis Cooper case by subpoena.

10. Based on the foregoing facts, your affiant submits that there exists sufficient probable cause to charge Elvis Cooper with Alien Smuggling for the purpose of Financial Gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and to hold Carolina Massote, Francesca Solomon and Wellida Bento-Tomaz as material witnesses in the above-referenced prosecution of Elvis Cooper, pursuant to 18 U.S.C. § 3144.

FURTHER AFFIANT SAYETH NAUGHT

_____
SPECIAL AGENT CYNTHIA SAMPLES
HOMELAND SECURITY INVESTIGATIONS

Sworn to and subscribed before me this
___7___ day of June, 2013,
in West Palm Beach, Florida

_____
HONORABLE JAMES M. HOPKINS
UNITED STATE MAGISTRATE JUDGE

5